- References to research supporting the effectiveness of Abilify in treating bipolar mania.

- An edited and abridged reprint of a research paper discussing the boundaries between bipolar disorder and schizophrenia.

80.  The promotional materials distributed at the 2004 Dallas Conference contain:

- Three entire sections devoted to off-label uses: "Bipolar Disorder Pharmacotherapy: A Focus on [Abilify]"; "Management of Acute Mania: A Focus on [Abilify]" which contains dosing recommendations; and "Maintaining Stability in Bipolar Disorder: A Focus on [Abilify]." By comparison, only one section focuses on Abilify in the treatment of schizophrenia (its only FDA approved use); one section discusses Abilify's tolerability and safety when used to treat bipolar mania and schizophrenia.

- A list of the attending "consulting physicians."

- A section entitled "Promotional Slides" focused on the at-that-point unapproved indication for acute mania, which state: "Abilify is indicated for the treatment of acute mania and mixed episodes associated with Bipolar I Disorder." Though Abilify would not receive this indication from the FDA for treatment of bipolar mania until October 2004, Defendants apparently felt no compunction about illegally marketing Abilify for this off-label use, as well as for the broader use for bipolar disorder, in early July 2004, and before.

- Supplemental slides that detail studies of Abilify in the treatment of acute bipolar mania, bipolar disorder, psychosis of Alzheimer's Disease, and the psychological symptoms of dementia — all off-label uses.

- A chart on the safety and efficacy of Abilify in the treatment of acute bipolar mania.

81.  "Consulting physicians" received copies of these off-label marketing presentations, and Defendants reasonably intended that these materials would be used as the "consulting physicians" "prepare[d] for [their] local and regional speaking engagements."

82.  Indeed, the "consulting physicians" did use the marketing materials distributed at the Conferences to promote off-label uses for Abilify. As Dr. Schefflein, a "consulting physician," described Defendants' promotional materials, "Abilify's slides are a commercial. . . .

**Filed Under Seal Pursuant
To 31 U.S.C. § 3730(b)(2)**

[Abilify] is really an antipsychotic, [for] schizophrenia." When asked in July 2004 whether Abilify is used off-label for bipolar disorder, he replied, "[b]ipolar, absolutely."

83. Dr. Schefflein also noted that Defendants' Abilify promotional presentations focused on bipolar disorder at a time "[Defendants were] trying to get approval for bipolar [for Abilify]." As discussed *supra*, Defendants are prohibited from marketing Abilify for the treatment of bipolar disorder (or any other disease) until the drug wins approval from the FDA for that indication.

84. Defendants ensured that their "consulting physicians," armed with copious presentations detailing Abilify's purported (but non-FDA approved) efficacy and effectiveness in the treatment of bipolar disorder, would speak with other physicians who treat bipolar patients.

**L.  Defendants' Improper Compensation Of "Consulting Physicians"**

85. Defendants' Abilify Conferences are, in reality, little more than paid vacations at resort locations for high-prescribing physicians to receive Defendants' promotional messages regarding the off-label uses of Abilify. For example, the Orlando Conference was held at the JW Marriott Orlando, Grande Lakes, which "presides grandly over 500 of the most coveted acres in Orlando, Florida" and offers "a new level of world-class comfort never seen before in Orlando." Defendants paid for the travel, hotel and meal expenses of the attendees, and gave each attendee $1,000.

86. Essentially, the Abilify Conferences serve three purposes:

- they give Defendants a captive audience of physicians to whom they aggressively market off-label uses of Abilify;

- they are held in resort locations so that Defendants, according to Dr. Schefflein, can "thank[ ] their big [prescription] writers. . . ."; and

**Filed Under Seal Pursuant
To 31 U.S.C. § 3730(b)(2)**

- they create opportunities for Defendants to cultivate new high prescribers who will target communities where Abilify presently lacks market penetration.

**M.  Non-reimbursable Claims**

87.  Defendants' illegal marketing of the off-label use of Abilify to treat acute bipolar mania, bipolar disorder, psychosis of Alzheimer's Disease, and the psychological symptoms of dementia caused prescriptions for Abilify to be written based on that off-label marketing, and consequently caused false claims to be submitted to Medicaid and other Government funded health insurance programs.

88.  Federal Medicaid regulations prohibit the payment of Medicaid claims for prescriptions for off-label uses. By their promotion of off-label usage, Defendants have wrongly and illegally caused to be presented non-reimbursable claims to Medicaid and other Government funded health insurance programs. *See generally Neurontin II*, 2003 U.S. Dist. LEXIS 15754, at *9. Furthermore, Defendants' aggressive off-label marketing has caused prescriptions to be written for Abilify that otherwise would not have been written — such prescriptions that were paid for by Medicaid and other Government funded health insurance programs constitute false claims.

**N.  Illegal Use Of Direct Payments (Masquerading as "Honoraria") In Violation Of The Anti-Kickback Statute**

89.  Defendants have provided monetary incentives to doctors who are high-prescribers of Abilify by paying them lucrative fees for attending the Conferences and speaking at lunches promoting Abilify. Dr. Schefflein, a prolific Abilify speaker, stated that Defendants pay him $2,000 per lecture for doing little more than discussing Abilify — and especially its off-label uses — over lunch.

90. The lucrative speaking fees are remuneration for past high-prescribing and inducements to write future prescriptions for off-label uses of Abilify. The benefits are also inducements to influence the high-prescribing speakers to vigorously tout the off-label uses of Abilify to audiences of influential physicians.

91. Defendants target influential doctors and potential high-prescribers to be attendees of the Abilify Conferences.

92. During all of these events, Defendants are engaged in off-label marketing of Abilify. Defendants' promotional materials are used, and Defendants' "consulting physicians" invariably move into telling how they really use Abilify — off-label. That off-label marketing is the purpose of these conferences and lunches.

93. Defendants compensate, in the form of direct payments (masquerading as "honoraria"), physicians nationwide who attended lunch or dinner discussions conducted by the "consulting physicians" who were "educated" concerning Abilify's off-label uses at the Conferences. Unsurprisingly, the subject matter of these meetings often focuses on the off-label uses of Abilify.

94. Federal statutory and regulatory law prohibits kickbacks for the promotion of off-label drug usage. A pharmaceutical manufacturer or other entity may not offer remuneration in any form to a beneficiary that the company knows or should know is likely to influence the beneficiary to prescribe items from a particular supplier. 42 U.S.C. § 1320a-7a(a)(5); § 1320a-7b(b) (the Medicare Fraud & Abuse/Anti-Kickback Statute, which also covers kickbacks affecting the Medicaid program).

**Filed Under Seal Pursuant**
**To 31 U.S.C. § 3730(b)(2)**

95. Kickbacks have the effect of reducing a patient's healthcare choices as unaware (and occasionally unscrupulous) physicians steer the patient to off-label products based on the physician's own financial interests, rather than the patient's medical needs. More basically, kickbacks undermine the physician's medical judgment as to the appropriate drug to prescribe.

96. Defendants' improper compensation of their "consulting physicians" and compensation of doctors who attend lunch or dinner meetings promoting Abilify constitute violations of the Anti-Kickback Statute.

### O. Stark Law Violations

97. The Stark Law prohibits a pharmaceutical manufacturer from paying remuneration to physicians for referring Medicaid patients to the manufacturer for certain "designated health services," including drug prescriptions, where the referring physician has a nonexempt "financial relationship" with that manufacturer. 42 U.S.C. § 1395nn(a)(1), (h)(6). Stark provides that the manufacturer shall not cause to be presented a Medicaid claim for such prescriptions. Stark prohibits payment of Medicaid claims for prescriptions rendered in violation of its provisions. 42 U.S.C.§ 1395nn(a)(1), (g)(1).

98. Defendants provided significant incentives in the form of lucrative and frequent speaking fees to doctors who were high-prescribers (or potential high-prescribers) of Abilify. The fees rewarded the doctors prescribing Abilify for off-label uses and for advocating such uses to other physicians. Under the Stark law, Defendants should not have been providing remuneration and incentives for those referrals. Further, through events like their all-expense-paid Conferences, Defendants seek to induce influential doctors to prescribe Abilify for off-label uses.

99.     Defendants' illegal largesse undermines the independence and accuracy of the information being provided to their hand-picked audience of Abilify prescribers and promoters.

100.    The "consulting physicians" (high-prescribing and influential physicians compensated by all-expense-paid weekends) direct their off-label messages at targeted audiences of physicians, who are induced to prescribe Abilify because of compensation received for time spent on lunch and dinner meetings promoting Abilify. Defendants intend that all of these audiences be made receptive to the message that Abilify can and should be used off-label, despite its harmful side effects detailed *supra*. See ¶¶ 56-66.

## COUNT ONE

### Federal False Claims Act, 31 U.S.C. § 3729(a)(1)

101.    Relator re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 100 of this Complaint.

102.    This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729(a)(1).

103.    By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to Medicaid and other Government funded health insurance programs false or fraudulent claims for the improper payment or approval of prescriptions for off-label uses of Abilify.

104.    The United States, unaware of the falsity or fraudulent nature of the claims that Defendants caused, paid for claims that otherwise would not have been allowed.

105.    By reason of these payments, the United States has been damaged, and continues to be damaged in a substantial amount.

**Filed Under Seal Pursuant<br>To 31 U.S.C. § 3730(b)(2)**

## COUNT TWO

### Federal False Claims Act, 31 U.S.C. § 3729(a)(2)

106. Relator re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 100 of this Complaint.

107. This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729(a)(2).

108. By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be made or used false records or statements that caused false claims to be paid or approved by the United States Government.

109. The United States, unaware of the falsity or fraudulent nature of the claims that Defendants caused, paid for claims that otherwise would not have been allowed.

110. By reason of these payments, the United States has been damaged, and continues to be damaged in a substantial amount.

## COUNT THREE

### Federal False Claims Act, 31 U.S.C. § 3729(a)(3)

111. Relator re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 100 of this Complaint.

112. This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729(a)(3).

113. By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants conspired—as evidenced by their worldwide

28

commercialization agreement to codevelop and copromote Abilify and their joint promotional materials and revenue sharing agreement—to defraud the United States Government by getting false or fraudulent claims for medical prescriptions to be allowed or to be paid or approved by the United States Government.

114. The United States, unaware of the falsity or fraudulent nature of the claims that Defendants caused, paid for claims that otherwise would not have been allowed.

115. By reason of these payments, the United States has been damaged, and continues to be damaged in a substantial amount.

## COUNT FOUR

### California False Claims Act, Cal. Gov't Code § 12651 *et seq.*

116. Relator re-alleges and incorporates by reference the allegations made in Paragraphs 1 through 100 of this Complaint.

117. This is a claim for treble damages and civil penalties under the California False Claims Act. Cal. Gov't Code § 12651 *et seq.*

118. By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the California Medicaid Program (i.e., Medi-Cal) false or fraudulent claims for the improper payment or approval of prescriptions for off-label uses of Abilify, used false records to accomplish this purpose, and conspired with each other to effectuate this plan.

119. The California Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

120. By reason of these payments, the California Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT FIVE

### Delaware False Claims Act, Del. Code Ann. tit. 6, § 1201 *et seq.*

121. Relator re-alleges and incorporates by reference the allegations made in Paragraphs 1 through 100 of this Complaint.

122. This is a claim for treble damages and civil penalties under the Delaware False Claims Act. Del Code Ann. tit. 6, § 1201 *et seq.*

123. By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the Delaware Medicaid Program false or fraudulent claims for the improper payment or approval of prescriptions for off-label uses of Abilify, used false records to accomplish this purpose, and conspired with each other to effectuate this plan.

124. The Delaware Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

125. By reason of these payments, the Delaware Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT SIX

### Florida False Claims Act, Fla. Stat. Ann. § 68.081 *et seq.*

126. Relator re-alleges and incorporates by reference the allegations made in Paragraphs 1 through 100 of this Complaint.

127. This is a claim for treble damages and civil penalties under the Florida False Claims Act. Fla. Stat. Ann. § 68.081 *et seq.*

128. By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the Florida Medicaid Program false or fraudulent claims for the improper payment or approval of prescriptions for off-label uses of Abilify, used false records to accomplish this purpose, and conspired with each other to effectuate this plan.

129. The Florida Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

130. By reason of these payments, the Florida Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT SEVEN

### Hawaii False Claims Act, Haw. Rev. Stat. § 661-22 *et seq.*

131. Relator re-alleges and incorporates by reference the allegations made in Paragraphs 1 through 100 of this Complaint.

132. This is a claim for treble damages and civil penalties under the Hawaii False Claims Act. Haw. Rev. Stat. § 661-22 *et seq.*

133. By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the Hawaii Medicaid Program false or fraudulent claims for the improper payment or approval of prescriptions for off-label uses of Abilify, used false records to accomplish this purpose, and conspired with each other to effectuate this plan.

134.  The Hawaii Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

135.  By reason of these payments, the Hawaii Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT EIGHT

**Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. 175/1 *et seq*.**

136.  Relator re-alleges and incorporates by reference the allegations made in Paragraphs 1 through 100 of this Complaint.

137.  This is a claim for treble damages and civil penalties under the Illinois Whistleblower Reward and Protection Act. 740 Ill. Comp. Stat. 175/1 *et seq*.

138.  By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the Illinois Medicaid Program false or fraudulent claims for the improper payment or approval of prescriptions for off-label uses of Abilify, used false records to accomplish this purpose, and conspired with each other to effectuate this plan.

139.  The Illinois Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

140.  By reason of these payments, the Illinois Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT NINE

**Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. Ann. § 46:439.1 *et seq.***

141. Relator re-alleges and incorporates by reference the allegations made in Paragraphs 1 through 100 of this Complaint.

142. This is a claim for treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity Law. La. Rev. Stat. Ann. § 46:439.1 *et seq.*

143. By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the Louisiana Medicaid Program false or fraudulent claims for the improper payment or approval of prescriptions for off-label uses of Abilify, used false records to accomplish this purpose, and conspired with each other to effectuate this plan.

144. The Louisiana Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

145. By reason of these payments, the Louisiana Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT TEN

**Massachusetts False Claims Act, Mass. Ann. Laws ch. 12, § 5(A)-(O)**

146. Relator re-alleges and incorporates by reference the allegations made in Paragraphs 1 through 100 of this Complaint.

147. This is a claim for treble damages and civil penalties under the Massachusetts False Claims Act. Mass. Ann. Laws ch. 12, § 5(A)-(O).

148. By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the Massachusetts Medicaid Program false or fraudulent claims for the improper payment or approval of prescriptions for off-label uses of Abilify, used false records to accomplish this purpose, and conspired with each other to effectuate this plan.

149. The Massachusetts Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

150. By reason of these payments, the Massachusetts Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT ELEVEN

### Nevada False Claims Act, Nev. Rev. Stat. §357.010 *et seq.*

151. Relator re-alleges and incorporates by reference the allegations made in Paragraphs 1 through 100 of this Complaint.

152. This is a claim for treble damages and civil penalties under the Nevada False Claims Act. Nev. Rev. Stat. §357.010 *et seq.*

153. By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the Nevada Medicaid Program false or fraudulent claims for the improper payment or approval of prescriptions for off-label uses of Abilify, used false records to accomplish this purpose, and conspired with each other to effectuate this plan.

154. The Nevada Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

155. By reason of these payments, the Nevada Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT TWELVE

**New Hampshire Medicaid Fraud and False Claims, N.H. Rev. Stat. Ann. § 167:61,** *et seq.*

156. Relator re-alleges and incorporates by reference the allegations made in Paragraphs 1 through 100 of this Complaint.

157. This is a claim for treble damages and civil penalties under the New Hampshire Medicaid Fraud and False Claims Law, N.H. Rev. Stat. Ann. § 167:61, *et seq.*

158. By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the New Hampshire Medicaid Program false or fraudulent claims for the improper payment or approval of prescriptions for off-label uses of Abilify, used false records to accomplish this purpose, and conspired with each other to effectuate this plan.

159. The New Hampshire Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

160. By reason of these payments, the New Hampshire Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

**Filed Under Seal Pursuant<br>To 31 U.S.C. § 3730(b)(2)**

## COUNT THIRTEEN

**New Mexico Medicaid False Claims Act, N.M. Stat. Ann. § 27-14-1 *et seq.***

161. Relator re-alleges and incorporates by reference the allegations made in Paragraphs 1 through 100 of this Complaint.

162. This is a claim for treble damages and civil penalties under the New Mexico Medicaid False Claims Act. N.M. Stat. Ann. § 27-14-1 *et seq.*

163. By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the New Mexico Medicaid Program false or fraudulent claims for the improper payment or approval of prescriptions for off-label uses of Abilify, used false records to accomplish this purpose, and conspired with each other to effectuate this plan.

164. The New Mexico Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

165. By reason of these payments, the New Mexico Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT FOURTEEN

**Tennessee Medicaid False Claims Act, Tenn. Code Ann. § 71-5-181 *et seq.* and Tennessee False Claims Act, Tenn. Code Ann. § 4-18-101 *et seq.***

166. Relator re-alleges and incorporates by reference the allegations made in Paragraphs 1 through 100 of this Complaint.

167. This is a claim for treble damages and civil penalties under the Tennessee Medicaid False Claims Act, and the Tennessee False Claims Act. Tenn. Code Ann. § 71-5-181 *et seq.*; Tenn. Code Ann. § 4-18-101 *et seq.*

168. By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the Tennessee Medicaid Program false or fraudulent claims for the improper payment or approval of prescriptions for off-label uses of Abilify, used false records to accomplish this purpose, and conspired with each other to effectuate this plan.

169. The Tennessee Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

170. By reason of these payments, the Tennessee Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT FIFTEEN

### Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. § 36.001 *et seq.*

171. Relator re-alleges and incorporates by reference the allegations made in Paragraphs 1 through 100 of this Complaint.

172. This is a claim for treble damages and civil penalties under the Texas Medicaid Fraud Prevention Act. Tex. Hum. Res. Code Ann. § 36.001 *et seq.*

173. By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the Texas Medicaid Program false or fraudulent claims for the improper payment or approval of

prescriptions for off-label uses of Abilify, used false records to accomplish this purpose, and conspired with each other to effectuate this plan.

174. The Texas Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

175. By reason of these payments, the Texas Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

## COUNT SIXTEEN

### Virginia Fraud Against Taxpayers Act, Va. Code Ann. §8.01-216 *et seq.*

176. Relator re-alleges and incorporates by reference the allegations made in Paragraphs 1 through 100 of this Complaint.

177. This is a claim for treble damages and civil penalties under the Virginia Fraud Against Taxpayers Act. Va. Code Ann. §8.01-216 *et seq.*

178. By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the Virginia Medicaid Program false or fraudulent claims for the improper payment or approval of prescriptions for off-label uses of Abilify, used false records to accomplish this purpose, and conspired with each other to effectuate this plan.

179. The Virginia Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

180. By reason of these payments, the Virginia Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

**Filed Under Seal Pursuant
To 31 U.S.C. § 3730(b)(2)**

## COUNT SEVENTEEN

**District of Columbia False Claims Act, D.C. Code § 2-308.03 *et seq.***

181. Relator re-alleges and incorporates by reference the allegations made in Paragraphs 1 through 100 of this Complaint.

182. This is a claim for treble damages and civil penalties under the District of Columbia False Claims Act. D.C. Code § 2-308.03 *et seq.*

183. By virtue of the kickbacks, misrepresentations and submissions of non-reimbursable claims described above, Defendants knowingly caused to be presented to the District of Columbia Medicaid Program false or fraudulent claims for the improper payment or approval of prescriptions for off-label uses of Abilify, used false records to accomplish this purpose, and conspired with each other to effectuate this plan.

184. The District of Columbia Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by Defendants, paid for claims that otherwise would not have been allowed.

185. By reason of these payments, the District of Columbia Medicaid Program has been damaged, and continues to be damaged in a substantial amount.

**WHEREFORE**, Relator Joseph Piacentile requests that judgment be entered against Defendants, ordering that:

    a.    Defendants cease and desist from violating the False Claims Act, 31 U.S.C. § 3729, *et seq.*, and the state false claims acts;

b. Defendants pay not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729, plus three times the amount of damages the United States has sustained because of Defendants' actions, plus the appropriate amount to the Certain States under similar provisions of the state false claims acts;

c. Relator be awarded the maximum "relator's share" allowed pursuant to 31 U.S.C. § 3730(d) and similar provisions of the state false claims acts;

d. Relator be awarded all costs of this action, including attorneys' fees and costs pursuant to 31 U.S.C. § 3730(d) and similar provisions of the state false claims acts;

e. Defendants be enjoined from concealing, removing, encumbering or disposing of assets which may be required to pay the civil monetary penalties imposed by the Court;

f. Defendants disgorge all sums by which they have been enriched unjustly by their wrongful conduct; and

g. The United States, the certain states, and Relator Joseph Piacentile recover such other relief as the Court deems just and proper.

## REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator Joseph Piacentile hereby demands a trial by jury.

**Filed Under Seal Pursuant
To 31 U.S.C. § 3730(b)(2)**

DATED:       February _1_, 2005

Respectfully submitted,

By: _____
Nancy Freeman Gans
**MOULTON & GANS, P.C.**
33 Broad Street, Suite 1100
Boston, MA 02101
Telephone: (617) 369-7979
Facsimile: (617) 369-7980

*Local Counsel*

Kirk E. Chapman
John D. Radice
**MILBERG WEISS BERSHAD
 & SCHULMAN LLP**
One Pennsylvania Plaza
New York, NY 10119-0165
Telephone:    (212) 594-5300
Facsimile:    (212) 868-1229

Mitchell R. Kreindler
**KREINDLER & ASSOCIATES, P.C.**
9219 Katy Freeway, Suite 206
Houston, Texas 77024-1514
Telephone:    (713) 647-8888
Facsimile:    (713) 647-8889

Sharon M. Gurak
**KREINDLER & ASSOCIATES, P.C.**
7 Great Valley Parkway, Suite 210
Malvery, PA 19355-1425
Telephone:    (610) 889-1100
Facsimile:    (610) 889-1112

*Attorneys for Relator Joseph Piacentile, M.D.*